Timothy A. Lukas, Esq. (NV Bar No. 4678)
**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Tel: (775) 327-3000
Fax: (775) 786-6179
Email: ECFlukast@hollandhart.com

*Attorneys for Z.B., N.A.*
*   dba Zions First National Bank*

# THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 18-50613-BTB |
| CLEARWATER BULLET, INC.,<br>    an Idaho corporation, | Chapter 11 |
| Debtor. | **OPPOSITION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES** |
| | Hearing Date:    June 12, 2018<br>Hearing Time:    2:00 p.m. |

Secured Creditor Z.B., N.A. dba Zions First National Bank ("ZIONS"), by and through

counsel, TIMOTHY A. LUKAS, Esq. of the Law Firm of Holland & Hart LLP, hereby files its

opposition to the Debtor's Motion For Order Authorizing Joint Administration Of Related Chapter

11 Cases filed on June 8, 2018, as DOC 5 (the "Motion") and requests the Court deny the relief

requested.

## A.    INTRODUCTION

This is a case driven the unilateral desires of a non-debtor David Howell ("Mr. Howell").

Mr. Howell, an Idaho resident, did not file for bankruptcy.  Pre-petition he resigned as an officer

and manager for a number of his companies and gave full operational control over them,

including the authority to file for bankruptcy, to a Chief Restructuring Officer by Agreement,

both individually as the equity holder and also on behalf of those various corporations and LLC's

who are all parties to a Chief Restructuring Officer Agreement ("CRO Agreement").   Besides

Mr. Howell, other entities to the CRO Agreement are also not debtors in bankruptcy in any

**HOLLAND & HART LLP**
**5441 KIETZKE LANE, SECOND FLOOR**
**RENO, NV 89511**
Phone: (775) 327-3000 ♦ Fax: (775) 786-6179

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ♦ Fax: (775) 786-6179

jurisdiction. The state of the financial affairs of Mr. Howell's companies included in the CRO Agreement arose from years of poor management and unrealistic expectations by him. Notwithstanding having set Howell Munitions & Technology, Inc. on a path towards satisfying it debt obligations by agreeing to resign as an officer and having the corporation retain a CRO, along with other debtor entities, Mr. Howell took unauthorized unilateral self-help steps to dispossess the CRO from the operational control of the Howell companies headquartered in Lewiston, Idaho; thereafter, he had Chapter 11 cases filed for a majority of those entities with this Court.   Under the bankruptcy code and rules of bankruptcy procedure there is no basis for the relief requested by motion for joint administration.  Bringing pieces of Mr. Howell's business enterprise to this Court gives no justification itself to rewriting the plain facts surrounding these debtors' filings and their request for unfounded procedural remedies.

**B.      FACTUAL BACKGROUND**

1.      Effective April 20, 2018, after a complicated and highly negotiated process with counsel, Mr. Howell and a set of companies entered into a Chief Restructuring Officer Agreement. *See* Declaration of Valerie L. Grindle in Support of Opposition to Motion for Joint Administration at ¶'s 4 and 5; and Declaration of Matthew R. McKinlay in Support of Opposition to Motion for Joint Administration at ¶'s 4 and 5; and, **Exhibit 1**, attached hereto and authenticated by Mr. McKinlay.

The CRO Agreement provides in pertinent part:

This Chief Restructuring Officer Agreement (the "Agreement") is made effective this 20th day of April, 2018, by and between the following: David Howell ("Owner"), Matthew McKinlay ("CRO"), Valerie Grindle ("Assistant CRO"), Z.B., N.A. dba Zions First National Bank ("Zions"), and the following entities (collectively the "Company"): Ammo Load Worldwide, Inc.; Big Canyon Environmental, LLC; Clearwater Bullet, Inc.; Freedom Munitions, LLC; Howell Machine, Inc.; Lewis-Clark Ammunition Components, LLC; Twin River Contract Loading, Inc.; X-Treme Bullets, Inc.; Howell Munitions & Technology, Inc.; and Components Exchange, LLC. Owner, CRO, Assistant CRO, Zions, and the Company shall be collectively referred to herein as Parties.

1. Company agrees to employ Matthew McKinlay of CFO Solutions, LLC dba Advanced CFO as Chief Restructuring Officer ("CRO") for the Company with the authority to employ and direct certain additional consultants to assist him, collectively the

"CRO Team". Valerie Grindle as Assistant CRO will serve as the on-site lead of the CRO Team.

2. CRO is authorized to perform the duties of the CRO of the Company to manage the business and operational affairs of the Company consistent with the role of the President and Treasurer or Manager, as appropriate, of the Company, subject to oversight of Zions and with the advice of an advisory board (the "Advisory Board"). . . . The CRO shall have authority on behalf of the Company to consent to the appointment of a receiver, or to file a petition or consent to an order for relief under Title 11 of the United States Code.

. . . .

5. Should the Company become a debtor under Chapter 11 of the Bankruptcy Code, CRO will provide services to the Company until its retention is approved or disapproved by the court or until our Services have been transitioned to another firm.

6. Owner shall resign as President, Treasurer (if applicable) and Manager of each entity comprising the Company and during the term of this Agreement shall hold no office in the Company. Owner shall at all times fully cooperate with the CRO Team and shall take no action which interferes with the duties of CRO as outlined in this Agreement. During the term of this Agreement, CRO shall have all of the powers and authority granted to the President, Treasurer and/or Manager of each entity comprising the Company and no other officer or Manager of any such entity may exercise such power or authority without the consent of CRO. Assistant CRO will have such powers and authority as CRO may grant to Assistant CRO. No officer or manager of the Company shall take any action contrary to the actions of the CRO, Assistant CRO or the provisions of this Agreement during the term of this Agreement.

. . . .

15. The CRO Team may be terminated with or without cause upon 30 days written notice from the Company and Zions. Neither Owner nor Company shall have the right to terminate this Agreement or terminate the CRO's services under this Agreement, absent the prior written consent of Zions, which consent shall riot be unreasonably withheld. No interested party, including Owner, shall be precluded, upon motion with a court of competent jurisdiction, from requesting the immediate modification of duties or removal of the CRO for cause shown.

16. This Agreement shall be interpreted and enforced in accordance with the laws of the State of Idaho. Subject to the provisions above, jurisdiction and venue of any action to enforce or interpret this Agreement shall lie exclusively in the state courts in Lewiston, Idaho or the federal courts in located in Coeur d'Alene, Idaho.

17. This Agreement and these Terms and Conditions constitutes the sole and entire agreement among the parties with respect to the items contained, and supersede any prior oral or written undertaking or agreement of any nature or description whatsoever. This Agreement may not be modified except by a writing signed by all of Company, CRO, Assistant CRO and Zions.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ♦ Fax: (775) 786-6179

1

2   [Emphasis Added].

3       2.      Neither the CRO nor ZIONS have received any requests to modify, amend or

4   remove the CRO.  Nor did the CRO or ZIONS agree to any amendments to the CRO Agreement.

5   *See* Declaration of Mr. McKinlay at ¶ 7; Declaration of Mark Siegel In Support of Opposition To

6   Motion for Joint Administration at ¶ 6.

7       3.      Shortly after lunch on Thursday, June 7, 2018, David Howell texted Ms. Grindle

8   (a usual manner of their communications) that he wanted to meet that afternoon on a "couple of

9   minor issues at 4:30".  She informed him that she could not meet then as she had scheduled

10  meetings for the remainder of the afternoon, but she had time on Friday morning.  Shortly after

11  4:30 p.m., David Howell ("Mr. Howell"), Stephen Howell (David's brother) and Officer Nike

12  Krakalia of the City of Lewiston, Idaho, opened Ms. Grindle's closed office door at the Howell

13  company headquarters building in Lewiston and entered without invitation.   She was on a

14  scheduled telephone conference at the time.  *See* Declaration of Grindle at ¶ 7.

15      4.      When Ms. Grindle indicated she could not speak with Mr. Howell at the moment,

16  he stated that she would and reached across her desk and hung up Ms. Grindle's telephone

17  conversation.  He told her he was terminating the CRO Agreement, and she needed to leave the

18  headquarters building immediately.  Ms. Grindle informed Mr. Howell that pursuant to the CRO

19  Agreement he had no authority whatsoever to do that.  Mr. Howell told her he absolutely had the

20  authority to do so and demanded her to leave, which the police officer also told her in a forceful

21  manner that he had the authority to terminate the CRO Agreement and she needed to comply.

22  Ms. Grindle was not shown any paperwork whatsoever of these claims and rebuffed on her

23  requests for the same.  *See Id.*  at ¶ 8.

24      5.      During their discussion, Mr. Howell, Stephen Howell and Officer Krakalia stood

25  in front of her desk blocking any exit from the office.  She demanded to be allowed to shut down

26  her computer and to make a phone call as I felt threatened by the conduct of Mr. Howell and

27  Officer Krakalia and wanted to make sure those who had been on the telephone with her knew

28

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ♦ Fax: (775) 786-6179

that she was ok.  Mr. Howell and the officer refused to allow her to make a phone call at which time she requested that she be able to text a party to the phone call again stating that she felt it was necessary to explain why she was terminated from the conference call.  They questioned her as to who she wanted to text to which she responded "my partner".  They allowed her to send one text, but as she was sending a very short text they told her to hurry up and became more confrontational. During the event, Mr. Howell and Officer Krakalia several times referred to one another by first name showing a high degree of familiarity with one another.   She then began to shut down my computer and was forcefully told by Mr. Howell to hurry up and that she needed to leave immediately.  As soon as her computer was shut down safely, she requested that Officer Krakalia reach down and unplug the power cord that was adjacent to his feet and which she could not reach to which he refused.  Stephen Howell then unplugged it for her.  She then placed her computer and peripherals into her briefcase along with her personal notebook and requested that Officer Krakalia escort her to the restroom to which he consented as Mr. Howell and Stephen Howell left my office and entered another office.  Officer Krakalia was standing outside the restroom when I exited and seemed noticeably less hostile as he escorted me out the door. *See Id.* at ¶ 9.

6.      HMT along with seven other entities controlled by Mr. Howell filed basic bankruptcy petitions with the United States District Court for the District of Nevada less than twenty-four hours later.

| | |
|---|---|
| - X-Treme Bullets, Inc., a NV corp. | Case No.  18-50609 |
| - Howell Munitions & Technology, Inc., an ID corp. | Case No. 18-50610 |
| - Ammo Load Worldwide, Inc., an ID corp. | Case No. 18-50611 |
| - Clearwater Bullet, Inc., an ID corp. | Case No. 18-50613 |
| - Howell Machine, Inc., an ID corp. | Case No. 18-5014 |
| - Freedom Munitions, LLC, an ID limited liability co. | Case No. 18-50615 |
| - Lewis-Clark Ammunition Components, LLC, an ID llc | Case No. 18-50616 |
| - Components Exchange, LLC, an ID limited liability co. | Case No. 18-50617 |

*See* **Exhibit 2**, organization chart of the debtors.

7.      Except for the *Statement Regarding Authority To Sign and File Petition* executed by Mr. Howell, ZION has no other information indicating under what authority HMT placed itself in bankruptcy.  *See Id.* at ¶8.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ♦ Fax: (775) 786-6179

8.    Per HMT's own admission, it is the sole shareholder of the debtors Ammo Load Worldwide, Inc., an Idaho corporation; Clearwater Bullet, Inc., an Idaho corporation; Howell Machine, Inc., an Idaho corporation; and, X-Treme Bullets,Inc., a Nevada corporation. *See* **Exhibit 2**, organization chart of the debtors.

9.    Mr. Howell, an Idaho resident, owns 95% of the debtor HMT.   He owns 100% of the membership interest in the debtor Lewis-Clark Ammunition, LLC, an Idaho limited liability company; and, he owns 90% of the membership interests of the debtor Components Exchange, LLC, an Idaho limited liability company.  Mr. Howell is not a debtor in bankruptcy.

10.    HMT had 64 employees at the time of the CRO's unauthorized removal from the headquarters building in Lewiston, Idaho.  These include employees providing services for the debtor entities as well as other non-debtor entities.  Except for two part-time employees who provide maintenance and care of X-Treme Bullets' mothballed bullet manufacturing facility in Carson City, all the employees of HMT reside in and around Lewiston, Idaho.  *See* Declaration of Ms. Grindle at ¶ 10.

11.    Prior to the CRO taking charge of the Companies on April 24th (the day after full execution of the CRO Agreement), Mr. Howell's mis-management of the Lewiston based Howell companies resulted in multi-million assessments against the HMT wholly owned subsidiary, Twin River Contract Loading, Inc., an Idaho corporation, and an assertion of corporate parent liability against HMT.  *See* Declaration of Mr. McKinlay at  ¶ 8.

12.    Prior to the CRO taking charge of the Companies, Mr. Howell admits that he had marketed and retained outside financial consultants, Cascadia Capital, without receipt of any offers acceptable to him.   It is the CRO's understanding that Mr. Howell has consistently had management difficulties with his companies and an over inflated opinion of their value.  *See* Declaration of McKinlay at ¶ 9.

13.    Subsequent to Ms. Grindle's removal from the headquarters in Lewiston, Mr. Howell terminated the Director of Manufacturing & Distribution for HMT, Mr. Chris Hayes and a Nez Perce County Sheriff's Deputy served him with a Uniform Notice Of Trespass the

**HOLLAND & HART LLP**
**5441 KIETZKE LANE, SECOND FLOOR**
**RENO, NV 89511**
Phone: (775) 327-3000 ◆ Fax: (775) 786-6179

following evening.  Mr. Hayes had been the Director of Manufacturing & Distribution at HMT since February 20, 2017, and in her experience with him, he had performed his duties well. *See Id.* at 11.

14.    Contrary to Mr. Howell's assertion of non-involvement with the companies after April 24th, the CRO and ACRO had frequent contact with Mr. Howell, and he remained on the HMT payroll through the end of May.  *See* Declaration of Mr. McKinlay at ¶ 10.   While disagreements about the process the CRO followed, Mr. Howell never made any written request for amendment of the CRO Agreement nor sought any relief to modify or remove the CRO.  *See Id.* at ¶ 11; Declaration of Siegel at ¶ 5, 6 and 7.

15.    As of the petition, the Debtor owes Zions $17,529,219.09 which is secured by all of the Debtor's assets.  *See* Declaration of Siegel at ¶ 3.

**C.    LEGAL ARGUMENT**

Joint administrative consolidation is a fairly common practice before the Court for related and affiliated entities.  Unfortunately, these cases do not share the requisite requirements for joint administration as Mr. Howell, the connecting piece between all of these is not himself in bankruptcy.  FRBP 1015 provides in pertinent part:

**(b) Cases Involving Two or More Related Debtors.** If a joint petition or <u>two or more petitions are pending in the same court by or against</u> (1) . . . , or (4) a <u>debtor and an affiliate,</u> the court may order a joint administration of the estates. Prior to entering an order the court shall give consideration to protecting creditors of different estates against potential conflicts of interest. . . .

[Emphasis Added.].  The bankruptcy code further defines as an "affiliate"  as:

The term "affiliate" means—

(A) <u>entity that directly or indirectly</u> owns, controls, or holds with power to vote, <u>20 percent or more of the outstanding voting securities of the debtor</u>, other than an entity that holds such securities—
   (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
   (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

(B) <u>corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned</u>, controlled, or held with power to vote, by the debtor, or by an entity that

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ♦ Fax: (775) 786-6179

directly or indirectly owns, controls, or holds with power to vote, <u>20 percent or more of the outstanding voting securities of the debtor,</u> other than an entity that holds such securities—
 (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
 (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

11 USC § 101(2).   As admitted by the Debtors and demonstrated by the organizational chart attached as Exhibit 2, the Debtors Lewis-Clark Components, LLC and Components Exchange, LLC, have no legal connection whatsoever to the other debtors brought under this motion, except for the linkage to the non-debtor Mr. Howell.  Except for the CRO Agreement which Mr. Howell contends in the pleadings that he unilaterally terminated pre-petition, no legal control binds all of the debtors together into one group.  Consequently, FRBP 1015(b) provides no avenue of relief for joint administration as requested.

  The motion and declaration in support of joint administration make really only one plea that it is judicially more efficient to use a common pleading for all the entities.  In effect treating the separate entities as one administratively consolidated entity for filing purposes.  However, the relief requested itself goes well beyond that issue.  It seeks joint financial accounting of a portion of the Howell operated entities[1], and joint and several liability for all administrative expenses.

  Zions will also be filing a motion to dismiss these cases under 1112(b) as these debtors lacked the legal authority to file these bankruptcy case contrary to Mr. Howell's assertion.  The CRO Agreement did not retain the unilateral right for Mr. Howell to exercise self-help and commence the filings before this Court for the balance of the debtors.  It is also very evident that Lewis-Clark Components, LLC, an Idaho limited liability company, and Components Exchange, LLC, an Idaho limited liability company, are improperly filed in the United States Bankruptcy Court for the District of Nevada under 28 USC §1408.

---

[1] The original CRO Agreement covered the operation of those entities being managed out of the Lewiston, Idaho headquarters.  But, not all entities would be covered by these cases creating another required realignment of operations and accounting to cover the debtors and sever the non-debtor entities.

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ◆ Fax: (775) 786-6179

**D.     CONCLUSION**

As stated above, it would be improper to grant the relief sought by the Debtor in its

motion.   The mere prospect of an easier docketing process itself does not justify abrogating the

bankruptcy code or rules of procedure merely to fit improperly filed cases before this Court.

DATED this 12th day of June, 2018.

HOLLAND & HART LLP

By _____*/s/ Timothy A. Lukas*_____
       Timothy A. Lukas, Esq.

*Attorneys for Z.B., N.A.*
*dba Zions First National Bank*

## **CERTIFICATE OF SERVICE**

I am, and was when the herein described mailing took place, a citizen of the United States, over 18 years of age, and not a party to, nor interested in, the within action; that on June 12, 2018, I served a true and correct copy of the **OPPOSITION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES** as follows:

**Electronic Mail Notice List:**

- STEPHEN R HARRIS    steve@harrislawreno.com, hannah@harrislawreno.com, norma@harrislawreno.com
- ROBERT E. OPERA    ropera@wcghlaw.com, pj@wcghlaw.com, stacyly@wcghlaw.com
- U.S. TRUSTEE - RN - 11    USTPRegion17.RE.ECF@usdoj.gov


DATED: June 12, 2018.

_____
/s/ Jeanette Sparks

HOLLAND & HART LLP
5441 KIETZKE LANE, SECOND FLOOR
RENO, NV 89511
Phone: (775) 327-3000 ◆ Fax: (775) 786-6179

# EXHIBIT 1

# Organization Chart

# EXHIBIT 1

# Organization Chart



**Howell Munitions & Technology, Inc.**
("HMT")
an Idaho corporation
(95% owned by David Howell)

PPofB – Lewiston, ID
Case No. 18-50610-btb

**X-Treme Bullets, Inc.,**
a Nevada corporation
PPofB – Carson City, NV
Case No. 18-50609-btb

**Ammo Load Worldwide, Inc.,**
an Idaho corporation
PPofB – Lewiston, ID
Case No. 18-50611-btb

**Clearwater Bullet, Inc.,**
an Idaho corporation
PPofB – Lewiston, ID
Case No. 18-50613-btb

**Howell Machine, Inc.,**
an Idaho corporation
PPofB – Lewiston, ID
Case No. 18-50614-btb

**Freedom Munitions, LLC**
an Idaho limited liability company
PPofB – Lewiston, ID
Case No. 18-50615

**Lewis-Clark Ammunition Components, LLC,**
an Idaho limited liability company
PPofB – Lewiston, ID
Case No. 18-50616-btb

Howell 100% -----------

**Components Exchange, LLC,**
an Idaho limited liability company
PPofB – Lewiston, ID
Case No. 18-50617-btb

Howell 90% -----------

Non-debtors:    Twin Rivers Contract Loading LLC
Big Canyon Environmental LLC

*PPofB – Principal Place of Business*

Debtor_s Organization Chart1106039\v1

# EXHIBIT 2

# Chief Restructuring Officer Agreement

# EXHIBIT 2

# Chief Restructuring Officer Agreement

## Chief Restructuring Officer Agreement

This Chief Restructuring Officer Agreement (the "Agreement") is made effective this 20th day of April, 2018, by and between the following:  David Howell ("Owner"),  Matthew McKinlay ("CRO"), Valerie Grindle ("Assistant CRO"), Z.B., N.A. dba Zions First National Bank ("Zions"), and the following entities (collectively the "Company"): Ammo Load Worldwide, Inc.; Big Canyon Environmental, LLC; Clearwater Bullet, Inc.; Freedom Munitions, LLC; Howell Machine, Inc.; Lewis-Clark Ammunition Components, LLC; Twin River Contract Loading, Inc.; X-Treme Bullets, Inc.; Howell Munitions & Technology, Inc.; and Components Exchange, LLC.  Owner, CRO, Assistant CRO, Zions, and the Company shall be collectively referred to herein as Parties.

1.      Company agrees to employ Matthew McKinlay of CFO Solutions, LLC dba Advanced CFO as Chief Restructuring Officer ("CRO") for the Company with the authority to employ and direct certain additional consultants to assist him, collectively the "CRO Team". Valerie Grindle as Assistant CRO will serve as the on-site lead of the CRO Team.

2.      CRO is authorized to perform the duties of the CRO of the Company to manage the business and operational affairs of the Company consistent with the role of the President and Treasurer or Manager, as appropriate, of the Company, subject to oversight of Zions and with the advice of an advisory board (the "Advisory Board").  The members of the Advisory Board shall include a representative of Zions, Angela Smith ("Smith") and such other members who are willing to serve and who are acceptable to Zions and Smith.  The CRO Team shall consult with the Advisory Board as the CRO deems appropriate in the execution of his duties. The Advisory Board will not, however, have authority to approve or disapprove decisions made or actions taken by the CRO, it being the agreement of the Parties that the Advisory Board to provide advice to the CRO as appropriate under this Agreement.  Except as otherwise provided, the CRO Team shall have authority over the operational, employment, accounting, and record keeping needs of the Company, and shall specifically endeavor to improve accounting and financial controls at the Company, as well as record keeping.  The CRO Team shall have authority to sell Company assets with the consent of Zions.  The CRO Team shall be responsible for filing monthly reports with the Company and Zions. CRO has the authority to provide periodic reports to Zions as it deems appropriate.  Neither the CRO nor the CRO Team has any responsibility to file any federal, state or local tax returns, but will provide oversight as needed for the reporting and filing of the returns by the appropriate employees of the Company. The CRO shall have authority on behalf of the Company to consent to the appointment of a receiver, or to file a petition or consent to an order for relief under Title 11 of the United States Code.

3.      In addition, the CRO Team will assist the Company in its restructuring efforts that the Company and Zions request from time to time.  The services are subject to change as mutually agreed among CRO, the Company and Zions.

4.      As part of its services, the CRO Team may be requested to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties.  In the event that the CRO Team participates in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not the CRO Team.

5.      Should the Company become a debtor under Chapter 11 of the Bankruptcy Code, CRO will provide services to the Company until its retention is approved or disapproved by the court or until our Services have been transitioned to another firm.

6.      Owner shall resign as President, Treasurer (if applicable) and Manager of each entity comprising the Company and during the term of this Agreement shall hold no office in the Company. Owner shall at all times fully cooperate with the CRO Team and shall take no action which interferes with the duties of CRO as outlined in this Agreement. During the term of this Agreement, CRO shall have all of the powers and authority granted to the President, Treasurer and/or Manager of each entity comprising the Company and no other officer or Manager of any such entity may exercise such power or authority without the consent of CRO. Assistant CRO will have such powers and authority as CRO may grant to Assistant CRO. No officer or manager of the Company shall take any action contrary to the actions of the CRO, Assistant CRO or the provisions of this Agreement during the term of this Agreement.

7.      Owner and Company shall at all times act in good faith to support the CRO Team in performing its duties, and shall provide the CRO Team with access to all books and records related to the Company, including but not limited to, all accounting records, contracts for services to be provided by Company, union contracts, licenses, permits, applications, purchase and sale agreements, and insurance policies. The Company's owners, agents, and employees shall fully and timely cooperate with the CRO in connection with the performance of its duties, and are enjoined from interfering with the CRO's performance of such duties. In the event a dispute arises between the CRO and Owner, or any existing owner, officer, agent, or employee of the Company regarding their compliance with this paragraph, the CRO shall have the right to seek a Court order, on five (5) business days' notice, enforcing the terms of this Agreement.

8.      At their sole discretion, upon fifteen (15) days' notice, the CRO and Assistant CRO may resign their employment by the Company and terminate their roles as CRO and Assistant CRO.

9.      The Company shall indemnify the CRO Team on the same terms as provided to its other officers and directors under the corporate/limited liability company articles, bylaws, operating agreements, limited liability company agreements or other corporate/limited liability company governing documents (e.g., board, manager, member or shareholder resolutions) (collectively, the "Governing Documents") and applicable state law and can and will provide insurance coverage for the CRO and Assistant CRO under its D&O policy. In the event Company does not currently have a D&O policy, Company shall acquire a D&O policy which provides insurance coverage for the CRO and Assistant CRO on terms typical in the industry in which Company operates. To the extent CRO's authority under this Agreement conflicts with the authority of any other officer, manager or member of the Company pursuant to the Governing Documents, this Agreement shall control and Owner hereby represents and warrants that it has taken, caused to be taken, will take or will cause to be taken all actions necessary to authorize the foregoing.

10.     The CRO Team shall have no liability to the Company or Owner for loss or diminution in value of or damage to the Company or its assets unless the loss, diminution in value, or damage is caused by an act or omission for which members of a board of directors of a private corporation organized and existing under the laws of Idaho, who vote to approve the act or omission, are liable to the corporation in cases in which the liability of directors is limited to the maximum extent permitted by Idaho statute or law.

11.     The CRO Team shall have no personal liability to the Company or Owner except for loss or damage occasioned by fraud on the part of the CRO or Assistant CRO, by acts

Page 2 – CHIEF RESTRUCTURING OFFICE AGREEMENT

intended by the CRO or Assistant CRO to cause loss or damage to the Company or Owner, or by acts or omissions for which an officer of a business corporation organized and existing under the laws of the State of Idaho are liable to the claimant under the same circumstances in cases in which the liability of directors is limited to the maximum extent permitted by Idaho statute or law.

12.     The CRO Team shall be paid for its services at the rate of $295.00/hour for work performed by Matthew McKinlay, $250.00/hour for work performed by Valerie Grindle, and between $150.00 and $250.00/hour for work performed by the CRO's other consultants, at their current prevailing rates.  In addition, the CRO Team shall be entitled to reimbursement for its reasonable expenses incurred in the performance of its duties on a monthly basis.

13.     Zions may, but shall have no obligation to, advance to the Company funds necessary to pay all amounts payable to the CRO pursuant to this Agreement. All such advances shall be considered advances made pursuant to the terms of Loan No. 1 between Company and Zions and shall be secured by the Security Agreement executed by Company and the Trust Deed, Assignment of Rents, Security Agreement and Fixture Filing executed by Owner.

14.     Work will commence upon the execution of this agreement, and receipt of a $25,000 retainer.  The retainer will be applied toward the final invoice, with any remaining unused balance to be refunded to the Company.

15.     The CRO Team may be terminated with or without cause upon 30 days written notice from the Company and Zions.  Neither Owner nor Company shall have the right to terminate this Agreement or terminate the CRO's services under this Agreement, absent the prior written consent of Zions, which consent shall not be unreasonably withheld. No interested party, including Owner, shall be precluded, upon motion with a court of competent jurisdiction, from requesting the immediate modification of duties or removal of the CRO for cause shown.

16.     This Agreement shall be interpreted and enforced in accordance with the laws of the State of Idaho. Subject to the provisions above, jurisdiction and venue of any action to enforce or interpret this Agreement shall lie exclusively in the state courts in Lewiston, Idaho or the federal courts in located in Coeur d'Alene, Idaho.

17.     This Agreement and these Terms and Conditions constitutes the sole and entire agreement among the parties with respect to the items contained, and supersede any prior oral or written undertaking or agreement of any nature or description whatsoever. This Agreement may not be modified except by a writing signed by all of Company, CRO, Assistant CRO and Zions.

18.     Neither party may assign any of its rights hereunder without the express written consent of the other party, which shall not be unreasonably withheld or delayed.

IN WITNESS WHEREOF the parties hereunder set their hands the day and year first above written.

**CHIEF RESTRUCTURING OFFICER:**

_____
Matthew McKinlay

**ASSISTANT CRO:**

_____
Valerie L. Grindle


**COMPANY:**

**AMMO LOAD WORLDWIDE, INC.,**
an Idaho corporation


By: _____
       David C. Howell, President


**BIG CANYON ENVIRONMENTAL, LLC**,
an Idaho limited liability company


By: _____
       David C. Howell, Manager

**CLEARWATER BULLET, INC.,**
an Idaho corporation


By: _____
       David C. Howell, President

**CHIEF RESTRUCTURING OFFICER:**

_____
Matthew McKinlay

**ASSISTANT CRO:**

_____
Valerie L. Grindle

**COMPANY:**

**AMMO LOAD WORLDWIDE, INC.,**
an Idaho corporation

By: _____
        David C. Howell, President

**BIG CANYON ENVIRONMENTAL, LLC,**
an Idaho limited liability company

By: _____
        David C. Howell, Manager

**CLEARWATER BULLET, INC.,**
an Idaho corporation

By: _____
        David C. Howell, President

**CHIEF RESTRUCTURING OFFICER:**

_____
Matthew McKinlay

**ASSISTANT CRO:**

_____
Valerie L. Grindle


**COMPANY:**

**AMMO LOAD WORLDWIDE, INC.,**
an Idaho corporation

By: _____
David C. Howell, President


**BIG CANYON ENVIRONMENTAL, LLC,**
an Idaho limited liability company

By: _____
David C. Howell, Manager

**CLEARWATER BULLET, INC.,**
an Idaho corporation

By: _____
David C. Howell, President

**FREEDOM MUNITIONS, LLC**
an Idaho limited liability company

By: _____
David C. Howell, Manager


**HOWELL MACHINE, INC.**,
an Idaho corporation

By: _____
David C. Howell, President


**HOWELL MUNITIONS & TECHNOLOGY, INC.**
an Idaho corporation

By: _____
David C. Howell, President


**LEWIS-CLARK AMMUNITION COMPONENTS, LLC**,
an Idaho limited liability company

By: _____
David D. Howell, Manager


**TWIN RIVER CONTRACT LOADING, INC.**,
an Idaho corporation

By: _____
David C. Howell, President


Page 5 – CHIEF RESTRUCTURING OFFICE AGREEMENT

**X-TREME BULLETS, INC.,**
an Idaho corporation

By: _____

David C. Howell, **president**


**COMPONENTS EXCHANGE, LLC,**
an Idaho limited liability company

By: _____

David C. Howell, Manager


**OWNER:**

_____

David C. Howell, individually

**ZIONS:**

Z.B., N.A. dba Zions First National Bank


By: _____

Its: _____


10901788_1

**X-TREME BULLETS, INC.,**
an Idaho corporation


By: _____
     David C. Howell, president


**COMPONENTS EXCHANGE, LLC,**
an Idaho limited liability company


By: _____
     David C. Howell, Manager


**OWNER:**


_____
     David C. Howell, individually

**ZIONS:**

Z.B., N.A. dba Zions First National Bank

By: _____

Its: _Senior Vice President_


10901209_1